# TWIN CITY MILK PRODUCERS ASSOCIATION v. RUTH FRANCES HELGER OASE, EXECUTRIX, SUBSTITUTED FOR JOHN H. HELGER, DECEASED. H. W. HILDEBRANDT AND ANOTHER, INTERVENERS.[1]

February 5, 1937.

No. 30,937.

*Louis H. Joss, James O. Caulfield,* and *Nelson, Mohan & Levy,* for appellants.

*Doherty, Rumble & Butler,* for plaintiff-respondent.

*H. E. Stassen, Elmer J. Ryan,* and *Anderson & Stone,* for defendant-respondent.

[1]Reported in 271 N. W. 253.

DEVANEY, CHIEF JUSTICE.

Appeal from order striking certain allegations of appellants' complaint in intervention.

Plaintiff-respondent, the Twin City Milk Producers Association, is a coöperative association organized pursuant to L. 1921, c. 23. It will hereinafter be referred to as the association.

The association is capitalized at $3,000,000, divided into 60,000 shares of stock of the par value of $50 each, which are held by some 8,000 members. No person can be a stockholder unless he is a dairyman engaged in business as such or an officer or director in a coöperative association engaged in the business of handling dairy products.

The business of the association consists of marketing fluid milk shipped in by its producer-members, each of whom is required to enter into a contract with the association whereby he subscribes for stock and agrees to consign to the association all milk and cream produced by his cows. The association markets as much of the milk and cream as is possible and manufactures the rest into other dairy products, which are also sold. It returns to its producer-members the price received for the milk and cream less the cost of operation and less deductions for certain reserves. In addition, these producer-members are paid annual dividends of not less than six per cent upon the capital stock they hold. The nonproducer-members who are officers and directors in coöperative associations handling like products are also paid annual dividends on the stock they hold.

From January 1, 1920, to October 31, 1932, the association deducted from its gross sales one-half of one per cent for the purpose of establishing a so-called sinking fund. Since October 31, 1932, the association has deducted one-fourth of one per cent for that purpose. On January 1, 1935, the amount of this sinking fund was $635,316.01.

The by-laws of the association provide:

"In the event that a stockholder ceases to be a dairyman engaged in business as such, or an officer or director in a coöperative cream-

ery association, or an officer or director of a coöperative association engaged in the manufacture of butter or cheese, or shall cease to sell his dairy products through this association, his stock certificate or certificates may be cancelled and upon the payment to him by the corporation of the actual value of such certificate or certificates they shall be surrendered to the corporation."

Since its organization the association has from time to time retired or purchased from ineligible members their shares of stock, paying therefor its par value, $50, plus the dividend accrued.

During recent years question has arisen as to the amount which should be paid by the association for capital stock so retired and as to the status of the sinking fund and its relation to the amount which ought to be paid for such stock.

The defendant-respondent is a member of the association who is no longer a dairyman engaged in the business as such and does not qualify as a nonproducer-member. He has tendered his share to the association, and he has demanded that it pay him the book value therefor, including the sinking fund as an asset in determining such value.

In order to settle controversies which developed by reason of this demand, the association instituted this action under the declaratory judgments act, L. 1933, c. 286, 3 Mason Minn. St. 1934 Supp. §§ 9455-1 to 9455-16.

After defendant had interposed his answer, the appellants, H. W. Hildebrandt, who is a stockholder no longer engaged in farming, and E. T. Larkin, an active member of the association, obtained leave of the court to intervene. Thereafter the association moved to strike certain allegations of interveners' complaint upon the ground that these allegations raised new issues independent and inconsistent with those raised by the original complaint and answer. The motion was granted. Interveners appealed.

Two questions are presented:

(1) Can an intervener raise new issues that are foreign to the issues raised by the original complaint and answer?

(2) Did the interveners herein raise new and different issues other than those raised by the original parties to the action?

■ The Minnesota statute of intervention, 2 Mason Minn. St. 1927, § 9263, provides:

"Any person having such an interest in the matter in litigation between others that he may either gain or lose by the direct legal effect of the judgment therein may serve a complaint in the pending action, at any time before the trial begins, alleging the facts which show such interest, and demanding appropriate relief against either or both of the parties. Such intervener shall not be entitled to delay, and, if a continuance be occasioned by him, it may be granted at his expense. The ordinary rules of pleading shall govern, except that the court, in order to avoid delaying the trial, may shorten the time within which subsequent pleadings shall be served. All the issues shall be determined together, and if the intervener's claim be not sustained he shall pay the costs resulting therefrom."

Respondents concede that under this statute appellants have the right to intervene but contend that the right to intervene does not carry with it the right to introduce new and foreign issues. In our opinion the contention is well taken.

That an intervener has no right to change the issues between the original parties and introduce into the action new and foreign issues is the rule that obtains in the great majority of jurisdictions. Ebersbach Const. Co. v. Charles Ringling Co. 100 Fla. 1270, 131 So. 148; Fountain v. Bryan, 176 Ga. 31, 166 S. E. 766; Steltzer v. Compton, 164 Iowa, 465, 145 N. W. 896, 897; Farmers & M. State Bank v. Goe, 110 Kan. 65, 202 P. 835; Hallett v. Moore, 282 Mass. 380, 185 N. E. 474, 91 A. L. R. 572; Monticello Bldg. Corp. v. Monticello Inv. Co. 330 Mo. 1128, 52 S. W. (2d) 545; Fleming v. Larkin, 197 App. Div. 624, 189 N. Y. S. 412.

We hold that the above stated rule is also the rule in this state.

Interveners, however, have laid great stress upon the case of Faricy v. St. Paul Inv. & Sav. Society, 110 Minn. 311, 125 N. W. 676, 679, claiming that under the rule of that case an intervener may introduce new issues into the main action so that multiplicity

of suits may be avoided. We do not agree with interveners' contention that this decision controls herein.

In that case no new issues were raised by the intervener nor did the complaint in intervention attempt any change of the issues between the original parties to the action. As stated by the court in its opinion [110 Minn. 319]:

"The intervention did not change the nature of the action, nor involve litigation also of an additional subject. * * * The issue presented by the original pleadings embraced the real ownership of the bonds and their validity. The intervention enabled the proper and complete determination of both these issues, and of no other issue."

The fact that the main action in this case is a suit under the declaratory judgments act can in no way affect the rules governing the right to intervene under our law and the limitations imposed thereon. And we hold that the law governing is not altered by the provisions of said act.

We conclude that the appellants as interveners have no right under the law of this state to be heard upon allegations introduced into the action by their complaint in intervention if such allegations change the issues in the main action or introduce new ones foreign thereto.

■ The action as originally commenced was a suit brought against the defendant as a stockholder to ascertain whether the funds of the association, particularly the so-called sinking fund, are the property of the stockholders as such or are the property of the producer-members of the association in the proportion in which they have contributed to them. Specifically, the controversy between the association, as plaintiff, and the defendant is the determination of the right of the defendant to have certain funds of the association considered in computing the actual value of the defendant's stock, within the meaning of the association's by-law hereinbefore quoted. The determination of this question will of course affect the amount to be paid as the purchase price for defendant's stock, but the court is not called upon to determine the specific amount due to defend-

ant or to anyone else, nor to enter a money judgment in any amount. The action is simply one asking the court to declare the status of various funds of the association in order to guide its officers in distributing the association's funds.

On the other hand, the complaint in intervention states the necessity of and asks for an accounting and an immediate distribution of the reserves and net earnings of the association. In support thereof it is charged, among other things, that the association has earned a net income in excess of $1,400,000 during the period between 1920 and 1934, which should be distributed; that the officers and directors of the association have failed to account to the stockholders for certain surpluses alleged to be in excess of $3,000,000; that the officers and directors are guilty of bad faith in not distributing the earnings of the association; and that the association is engaged in the investment or banking business contrary to the laws of Minnesota. The complaint also demands that the association make an immediate distribution of net earnings or profits to *all* stockholders and members now engaged in farming and dairying or who are officers or directors in coöperative associations engaged in manufacturing dairy products and who have not asked for the retirement of their stock or return of their capital investment in the association.

We believe that it is clear that the interveners' request for an accounting and their demand for immediate distribution of the association's funds, if allowed, would have changed the whole character of the action and introduced issues entirely new and foreign to those in the main action. The issues raised by the original complaint and answer did not make the action one for an accounting. Nor was there any request by either party for an immediate distribution of the association's funds. As has been stated, there was involved in the action only a question of the status of various funds of the association with reference to the determination of the actual value of defendant's stock. That a suit for an accounting and distribution of funds is entirely dissimilar in nature from one for the determination of rights and status is so obvious as to require no discussion.

The question whether there should or should not be a distribution of the earnings and reserves was an entirely new issue in itself. Likewise the issues raised by the allegations in support of the demand for a distribution were entirely new and foreign to the alleged action. Such matters as the amount of earnings, the good or bad faith of the officers and directors, or the legality of the business operations of the association were not questions properly placed before the court by the original complaint and answer, and they had no bearing on the issues raised thereby.

As the questions of accounting and distribution and the other issues raised thereby are not involved in the action between the plaintiff and the defendant and have no bearing on the issues raised between them, the outcome of the original suit can in no way affect the rights of the interveners in a separate action for such accounting and distribution. The issues are wholly dissimilar, and the determination of those raised between the plaintiff and the defendant therefore cannot be *res judicata* of the issues between the association and the interveners as raised by the complaint in intervention.

Whether or not interveners' request for attorneys' fees constituted a new and foreign issue it is unnecessary to decide. Such request necessarily must be based upon an assumption of the propriety of the interveners' suit. As the suit herein brought was not properly the subject of an action in intervention in this action, the question of the awarding of attorneys' fees did not arise and was not an issue before the court.

The order is affirmed.

MR. JUSTICE PETERSON, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.