## RUSSELL McKERCHER v. ARNE VIK AND ANOTHER.[1]

February 19, 1937.

No. 31,128.

*Oscar R. Knutson,* for appellants.
*H. O. Chommie,* for respondent.

LORING, JUSTICE.

This was an action to enforce specific performance of an option to purchase land. The case was tried to the court without a jury, and the court made findings of fact and conclusions of law and order for judgment in favor of plaintiff. From an order denying defendants' motion for amended findings or a new trial, this appeal is taken.

[1]Reported in 271 N. W. 489.

One Herbert Nelson was originally the owner of the land here in dispute. Plaintiff, on April 10, 1934, rented the land from Nelson, and the lease gave plaintiff an option to purchase the property during the life of the lease for stated consideration. Plaintiff did not exercise that option, but in the fall of 1934 a new lease for the rental of the property during the year 1935 was executed between Nelson and plaintiff and the same option incorporated therein. The new lease was to run from April 10, 1935, to April 10, 1936. March 20, 1935, Nelson conveyed the land covered by the lease to defendant Arne and his wife, and March 29, 1935, the property was conveyed to defendant Arne's daughter, Anna Marie, who is a defendant herein. Plaintiff farmed the land during the 1935 season. December 6, 1935, Nelson gave plaintiff a quitclaim deed to the premises. Plaintiff's lease and option was not recorded. There was a $500 mortgage on the land executed by Nelson to the Federal Land Bank, which was of record. The first question presented is whether or not defendant Arne had actual notice of plaintiff's option when he bought the land.

The negotiations between Nelson and defendant started on the Vik farm. Lars Vik, defendant's son, told Nelson that he understood that Nelson was looking for someone from whom to borrow money and then asked him if he wanted to sell the 80 acres here involved. Defendant Arne was present at this conversation but understands and speaks little or no English. Nelson advised Lars that he would like to sell the 80 but that he could not because there was an outstanding option on it. Lars then turned to his father and spoke to him in Norwegian. He then advised Nelson that his father wished to go to the register of deeds' office in Thief River Falls. Nelson and defendant Arne got into Vik's car and went to the register of deeds' office. Nelson understands very little Norwegian. At the register of deeds' office defendant spoke to a Mr. Lorentson. The conversation was entirely in Norwegian, and Nelson testified that he did not understand any of it. Defendant Arne then made Nelson understand that he wanted him to go with him to Mr. Quale, an attorney. When defendant Arne and Nelson

reached Quale's office, Arne and Quale spoke in Norwegian, and Quale finally informed Nelson that the land could be sold and asked Nelson how he wanted to sell it. Nelson said he wanted to sell it "subject to everything," and further testified:

Q. "Now, was anything said in that conversation about any option that Russell McKercher had?

A. "Oh, yes.

Q. "What was said, as you recall it?

A. "We had a copy of the lease and option there at the time, and Mr. Quale was studying it over and he looked over the option and then he spoke to Mr. Vik in Norwegian for a while and then finally he took a paper in the other room and had a deed made out. * * *

Q. "Now, do you recall if anything was said by you and by Mr. Vik about McKercher's option, the likelihood of his exercising his option?

A. "Well, there was between Quale and I. I spoke to Quale. I asked—he asked me whether there was any chances that Russell would take the land, and I said I didn't know, but chances are he wouldn't. * * *

Q. "And did Mr. Vik enter into that conversation—Mr. Vik?

A. "Well, then Mr. Quale talked to Mr. Vik in Norwegian for a while and then he said, 'How about it?' Well, he said something about chance, and then Mr. Vik nodded and he said 'I take chance.' * * *

Q. "Mr. Vik said that he would take a chance?

A. "He said, 'I take chance.' I don't know whatever the connection was.

Q. "Did he say that in English?

A. "In kind of half English and half Norwegian."

In the second lease containing the option which the plaintiff had there was an error in the description of the land, and plaintiff had returned the lease to Mr. Quale, who had drawn it, to have it corrected. That lease was in Quale's possession when the transaction described above took place. On the trial Nelson identified that lease

by the flap upon which was written the option and by the written names upon the back. The first lease was a typewritten one, while the second was written upon a form with the option clause attached by a rider, and the first lease had no names written upon the back. From this it will be seen that there was abundant evidence to support the finding of Arne Vik's actual knowledge of plaintiff's option.

■ The question of estoppel must be viewed from the standpoint that Vik went into the deal with full knowledge that plaintiff had a valid option which he might exercise up to April 10, 1936. Defendants make much of Vik's efforts to prepare the land for crop in 1936. He burned plaintiff's straw pile; he cut some brush and did some plowing. The burning of the straw was of course insignificant as preparation. The straw was personal property belonging to plaintiff, and its destruction on land upon which plaintiff had a lease until the April following was indefensible upon any theory of the situation even if plaintiff had had no option. The most that was proved about the plowing was that plaintiff's father saw a tractor standing in the field with some plowing done. There was no showing that any plowing was done subsequently to that time. There was evidence that only a small part of the land could be seen from the road. Upon the whole record, we are of the opinion that the trial court's finding that there was no estoppel is justified.

■ Plaintiff's counsel testified. This should be avoided, but in this case he may not have realized that his testimony would be material until he had got into the trial. That he was counsel did not make his testimony inadmissible. From the standpoint of the trier of fact it merely went to the weight of the evidence.

Affirmed.

MR. JUSTICE JULIUS J. OLSON took no part in the consideration or decision of this case.