RONALD J. CARON v. FARMERS INSURANCE EXCHANGE
AND ANOTHER.
LOUIS E. BEEHRLE AND OTHERS, INTERVENORS.

90 N. W. (2d) 86.

April 25, 1958—Nos. 37,160, 37,161, 37,162, 37,163, 37,164, 37,165,
37,166, 37,167, 37,168, 37,169.

*Ray G. Moonan, George A. Lewis,* and *Norman E. Evidon,* for appellant Caron.

*A. C. Johnston,* for appellant Beehrle.

*Glenn D. McCarty,* for appellants Moen.

*Thomas J. Battis* and *Murnane & Murnane,* for respondent Farmers Insurance.

*Maurice H. Rieke,* for respondent Mutual Service.

FRANK T. GALLAGHER, JUSTICE.

Appeals from five judgments of the district court in favor of the Farmers Insurance Exchange, herein referred to as Farmers Insurance, and five judgments in favor of the Mutual Service Casualty Insurance Company, herein referred to as Mutual Service. The cases were tried before a jury in Ramsey County District Court in May 1956. The trial court directed verdicts in favor of defendants resulting in the judgments from which this appeal was taken.

The action was brought by plaintiff, Ronald J. Caron, against said insurance companies to enforce two contracts of liability insurance, under which plaintiff claims that defendants are required to pay certain judgments against him entered in the District Court of Anoka County

in June 1954. The intervenors, Louis E. Beehrle; Martha M. Moen; Howard O. Moen, as trustee for the heirs of Lester O. Moen, decedent; and Richard Wayne Moen, a minor, by Martha M. Moen, his guardian ad litem, are the judgment creditors who have been made parties to the action by intervention.

Plaintiff and intervenors claim that plaintiff had fulfilled the terms of the insurance contracts between him and defendant insurance companies, while the latter claim that he breached the contracts.

According to the record, on June 13, 1953, a car owned by Lester O. Moen, deceased, and driven by plaintiff collided with a car owned and operated by James Van Gordon. At the time of the collision the Moen car was occupied by intervenors, Martha M. Moen, Richard Moen, and Louis E. Beehrle; also by Lester O. Moen, owner of the car; plaintiff, Caron, its driver; and Mrs. Caron, his wife. Lester O. Moen and Martha M. Moen were husband and wife; Mrs. Caron was their daughter; and plaintiff was their son-in-law. Louis E. Beehrle was an unrelated friend, and Richard Moen was a minor son of Martha and Lester O. Moen. Lester O. Moen died as a result of the accident and the other occupants were injured.

The Van Gordon car was not insured and its owner is not involved in this appeal.

It appears from the record that plaintiff was covered by a policy of liability insurance with Mutual Service to the extent of $17,500 and $35,000, which protected him while driving cars other than his own, and that plaintiff, as driver, and Lester O. Moen, as owner, were both covered by liability insurance with Farmers Insurance to the extent of $10,000 and $20,000.

As a result of the accident the following actions were brought in Anoka County and tried in district court in March 1954: Beehrle v. Van Gordon, Caron, and the estate of Lester Moen, resulting in a verdict of $30,000 against all defendants; Martha Moen v. Van Gordon and Caron, resulting in a verdict of $4,500 against both defendants; the estate of Lester Moen v. Van Gordon and Caron, resulting in a verdict of $17,500 against both defendants; Richard Wayne Moen, a minor, by Martha M. Moen, his guardian ad litem, v. Van Gordon and Caron resulting in a verdict of $1,500 against both defendants; and

Mrs. Caron v. Van Gordon and the estate of Lester Moen, resulting in a verdict of $750 against both defendants. Mr. Caron brought no action on his own behalf. Mrs. Caron did not intervene in these proceedings.

Both defendants claim plaintiff violated identical conditions set forth in their respective policies which provided in part that the insured shall cooperate with the respective companies upon their requests; shall attend hearings and trials; and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in the conduct of suits.

Defendants claim that plaintiff failed to cooperate. They base their claim on testimony given by plaintiff at the Anoka trial which they assert was inconsistent with information he had previously given them concerning his knowledge of the happening of the accident.

It was the position of the trial court that in order for defendants to prevail they must show that the evidence in this case demonstrated as a matter of law: (a) That plaintiff's testimony at Anoka was inconsistent with his previous oral or written statements to defendants or their attorneys or agents, as to what he knew about the accident; (b) that the variance was a material one; (c) that it was prejudicial to defendants' rights; and (d) that it was intentional and not an innocent or inadvertent mistake.

It was the opinion of the trial court that lack of cooperation on the part of plaintiff appeared from the undisputed facts and that as a result there were no questions of fact to submit to the jury and verdicts were directed, accordingly, in favor of defendants. The trial court therefore took the position that defendants have not waived their rights to invoke the defense of lack of cooperation, based on the testimony of plaintiff at the trial which was inconsistent with previous statements and which was material, intentional, and prejudicial to the defendants.

The record before us is extensive, including many exhibits. There are three points in particular on which the defendants claim plaintiff's testimony at the time of the Anoka trial differed from statements and interviews he had with their representatives and attorneys prior to that trial. The conflicts involved the following matters: (a) As to whether plaintiff was dozing or wide awake at or about the time of the accident; (b) as to whether there was a car about 200 feet behind the one he was

driving for some time prior to the accident; and (c) as to what he knew about how the accident happened.

While space will not permit a detailed review of the voluminous testimony and exhibits we shall consider what we deem the important contrasts on those points.

(a) In connection with the first point as to whether plaintiff was dozing or wide awake at or just prior to the time of the accident, he answered in his report of the accident received by the Farmers Insurance on June 30, 1953, "I dozed off * * *."

On July 2, 1953, in a statement given by plaintiff to a representative of the Farmers Insurance he said, "Well, I dozed and I woke up and he was right there." When asked if he remembered dozing at the time of the accident he answered, "Well, I evidently did." He stated he did not see the other car coming at all. At another place in that statement he said that he must have dozed off and "Then this car was right there in front of me when I woke up."

On July 9, 1953, plaintiff stated to a representative of the Farmers Insurance, when asked if he was sure he was dozing, "There is a possibility that I can't say definitely if I dozed or not."

On January 15, 1954, in a statement given by plaintiff to an attorney for the Farmers Insurance, plaintiff said he was wide awake at the time of the accident.

When questioned on cross-examination at the Anoka trial in March 1954 he was asked:

"Q.   * * * Did you doze off?

"A.   I was tired from being up all day and fishing on the lake and driving, I may have, but I don't think I did.

"Q.   You may have, you don't know?

"A.   I don't know if I did or not. No, I don't think I did."

(b) With reference to the conflict in his testimony as to whether a car followed him prior to the accident, in a signed statement dated August 6, 1953, plaintiff said, "There was a car about 200 feet behind me."

In the statement of January 15, 1954, plaintiff said, in answer to a question as to whether he noticed the lights of the car which was follow-

ing him, that he had not paid any attention as to whether there were any cars following him outside of looking once in a while to see if there was anybody passing.

On March 26, 1954, at the Anoka trial he was asked:

"Q. Now, just prior to this accident, was any car following you?
"A. No.
"Q. What?
"A. No.
"Q. No car at all. Was there any car behind you at all to your knowledge?
"A. No.
"Q. You saw no reflection in your rear view mirror?
"A. None."

(c) In connection with what he knew about how the accident happened plaintiff said in his report of the accident made June 30, 1953, that he was 20 to 30 feet from the point of collision when he first saw the other vehicle. On July 2, 1953, after stating that he dozed, he said that when he woke up he (Van Gordon) was "right there" but that he didn't remember seeing that car coming at all.

In his statement of August 6, 1953, plaintiff said in part that he suddenly saw a car without lights coming right at him, at which time he believed he was in his right lane; that he didn't have time to think but "just swerved to my left to try to avoid him."

In his January 15, 1954, statement, plaintiff said that there was no doubt in his mind that at the time of the accident he was on his right side of the road; that the other car (Van Gordon's) was right in front of him when he first observed it; that plaintiff swerved to the left to try to avoid him inasmuch as the Van Gordon car was coming down plaintiff's lane; and that plaintiff was driving at about 50 miles per hour.

At the Anoka trial on March 26, 1954, he was asked on cross-examination: "Is it à reasonable statement that you really don't know what did happen?" and he answered "Yes."

About 1:30 p. m. that same day, before court reconvened for its afternoon session, plaintiff was examined by defendants' attorneys before a court reporter. He was questioned with reference to many

matters, including the fact that he and his wife were living in the same house with his mother-in-law and brother-in-law, two of the intervenors, as well as other matters relating to attorneys he had talked with at different times in connection with the case. He was questioned about the testimony he had given on cross-examination that morning at the Anoka trial with reference to dozing, whether there was a car behind him, and how the accident happened. He admitted certain conflicts between his previous statements and that given at the trial. He was asked by the attorney for Mutual Service:

"Q. So you went into this trial, full well realizing that if your testimony was different from what you had given either one of your insurance companies, that you were violating your policy, didn't you know that?

"A. I didn't know anything about the policies at all.

"Q. I told you, didn't I, on two occasions, once right here on the morning of the trial and once at 1167 [Northwestern Bank Building, Minneapolis], that if you testified differently from the information you gave us, it would violate the policy, didn't I tell you that?

"A. This is the first you told me there would be trouble about the insurance is all.

"Q. I told you right here in this room in probate court—

"A. You didn't say anything about the policy.

"Q. I told you at 1167 Northwestern Bank Building, also, there wouldn't be any insurance unless you told us the same story?

"A. I don't remember that. You said there would be trouble with the insurance is all I remember you saying.

\* \* \* \* \*

"Q. You knew there would be trouble with the insurance if you did not have the same story on the witness stand before the jury as you told Mr. Peterson, myself, Mutual Service and Farmer's Insurance Exchange, you knew that would happen?

"A. Yes."

After additional questioning by the attorney for Farmers Insurance concerning conflicts between plaintiff's previous statements and testimony at the Anoka trial, the attorney for Farmers Insurance informed

plaintiff that he and the Farmers Insurance believed that plaintiff had failed to cooperate with them in that he had told them on numerous occasions that he knew that he was on his own side of the road at and before the crash; that he saw the oncoming car shortly before the crash; and that it did not have any headlights burning. The attorney further informed plaintiff that he and the Farmers Insurance were withdrawing from the defense in these cases because of plaintiff's testimony just before lunch on March 26, 1954, that he really did not know what had happened, and on other grounds.

Before withdrawing, however, the attorney notified plaintiff that if the latter requested it he would ask the court for a continuance so that plaintiff could secure an attorney of his own choosing to represent him in the case; that he would turn over to that attorney, when selected, the benefit of the investigations his firm had already made, together with names and addresses of witnesses.

Counsel for Mutual Service then proceeded to inform plaintiff that in view of the fact that he had told him and representatives of his company stories different from that given on cross-examination that morning that his company's rights had been prejudiced. For example, he stated that among other things plaintiff's story given on August 6, 1953, was different from the answers given by plaintiff to Mr. Johnson on cross-examination at the trial that morning, particularly where he answered Johnson that he did not know what happened. He also informed plaintiff that the company was prohibited from putting in testimony in plaintiff's behalf as to all of the facts of the accident which he claimed plaintiff had previously disclosed to him and the company and that they were thereby seriously prejudiced to the point where they could not proceed with the trial on account of being deprived of these facts.

Plaintiff was also informed that on the further ground that he had violated the cooperation clause of the Mutual Service policy they were under no obligation because of plaintiff's violation to proceed with the defense in his behalf and that they were withdrawing. The attorney for Mutual Service joined with counsel for Farmers Insurance in his offer to ask the court for a continuance if requested by plaintiff and in offering full access to plaintiff's lawyer to witnesses and other in-

formation for the defense. Plaintiff was urged to request a continuance; to get his own lawyer to advise him of his rights, as to what he should or should not do. In reply plaintiff stated: "I cannot see where I violated the policy." He was then asked, "Don't you think you ought to get your own lawyer?" and he answered "Yes."

Plaintiff and intervenors have raised numerous assignments of error. The matters which we consider most pertinent to the appeal are: (1) Whether the trial court erred in directing verdicts for the defendant insurance companies on the ground that plaintiff had violated the cooperation clauses in the insurance policies involved, and (2) should there have been a directed verdict in favor of intervenor Beehrle against Farmers Insurance to the extent of the maximum coverage afforded Beehrle under his judgment against Lester O. Moen, deceased.

■ In connection with the first matter plaintiff argues that it is apparent from the record that defendant insurance companies never gave the slightest consideration to plaintiff. He contends that trained insurance investigators and able and experienced lawyers for the companies, while ostensibly representing plaintiff, were at all times adverse to him and that pitted against these trained men plaintiff stood alone in an unequal contest.

Defendants on the other hand take the position that the serious and prejudicial conflicts between what plaintiff told them before the trial and the testimony that he gave at the trial constituted such a breach of the cooperation clauses of their respective contracts as to justify their withdrawal from the Anoka case and the directed verdicts of the court in the instant case.

On motion for a directed verdict the evidence must be viewed in the light most favorable to the party opposing it. Merchants & Farmers Mutual Cas. Co. v. St. Paul-Mercury Ind. Co. 214 Minn. 544, 8 N. W. (2d) 827. The right to direct a verdict also involves the duty to do so but such right is to be cautiously and sparingly exercised. Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649. A motion for a directed verdict, which by its very nature accepts a view of the entire evidence most favorable to the adverse party and admits credibility of evidence in his favor and all reasonable inferences to be drawn therefrom, should be granted only in cases where it would be clearly the duty of the trial

court to set aside a contrary verdict as being manifestly against the entire evidence or where it would be contrary to the law applicable to the case. Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637.

The law with reference to whether an insured has breached the cooperation clause in a policy of automobile indemnity insurance has been well set out by this court in Annis v. Annis, 250 Minn. 256, 84 N. W. (2d) 256, and cases cited. In that case we said that whether an insured under a policy of automobile indemnity insurance has breached the cooperation clause is a question of fact and a trial court's findings thereon will be affirmed on appeal if they are sustained by the evidence as a whole. We further said in that case that an insured satisfies the cooperation clause of an automobile indemnity policy if he stands upright at all times as an honest man who neither aids nor injures the insurer by an intentional or material departure from the truth as he knows in good faith or reasonably believes the truth to be. The opinion explained that the standard of cooperation is not impaired by any slight discrepancies or unimportant variations between the insured's pretrial disclosure of the facts and his testimony at the trial or by any unintentional or accidental mistakes in his pretrial accounts of the circumstances and causes of the accident. The court emphasized that good faith in telling and adhering to the truth at all times (250 Minn. 259, 84 N. W. [2d] 259) "is the keystone of the cooperation arch"; and that the insured must not prejudicially embarrass or cripple his insurer in its defense by switching from one version of facts to another in order to suit his own convenience or that of a third party.

We now come to the question whether the trial court erred in directing verdicts for the defendant insurance companies on the ground that plaintiff had violated the cooperation clauses in the insurance policies involved. The trial court took the position in directing verdicts for defendants that under the record here there was no question of fact to be submitted to the jury. It is our opinion that under the Annis case the question as to whether plaintiff breached the cooperation clauses in the insurance contracts were fact questions.

Viewing the evidence in the light most favorable to the plaintiff, against whom the verdict was directed, we must concede at the outset

that his reports, statements, and testimony are in conflict as to whether he was dozing or wide awake at the time of the accident; as to whether a car followed him at about 200 feet; and as to what he knew about how the accident happened. That being so, were those conflicts such intentional and material departures from the truth as to violate the cooperation clauses in the policies so that as a matter of law the defendant insurance companies would be justified in withdrawing from plaintiff's defense? In other words, did the insurance companies or its attorneys and representatives know or have reason to believe prior to the time they withdrew from plaintiff's defense at the Anoka trial on March 26, 1954, that plaintiff's statements as to whether he dozed or was awake, as to whether a car followed him, and as to what he knew about the accident differed or were uncertain?

The trial court took the position in directing the verdict that, while defendants' cases were weakened by plaintiff's failure to be decisive in his versions of the accident, defendants still had some defense to their actions until the moment plaintiff disqualified both himself and a Mr. Hoakanson while under cross-examination at the Anoka trial when he said "No" when asked whether there was any car following him.

In this connection Ira Peterson, an attorney, testified at the trial of the instant case in Ramsey County District Court in May 1956. He had represented the Farmers Insurance in connection with its policy and had appeared prior to his withdrawal from the case for plaintiff and for the estate of Lester O. Moen when they were defendants in the Anoka trial in March 1954. He said that on March 24, 1954, the day before the Anoka trial was to start, plaintiff told him that he did not know whether there was a car behind him. He discussed the matter again the following morning with plaintiff and Mr. King, attorney for Mutual Service, in the probate room of the court house in Anoka. Peterson's testimony with reference to that discussion was as follows:

"Well, as I said, I told Mr. Caron that Mr. Hoakanson would testify that he had been following Mr. Caron for several miles at a distance of two or three hundred feet; that Mr. Hoakanson told us he would testify that just before the accident happened a new Pontiac passed him, Mr. Hoakanson, and also passed Mr. Caron, and that just as the

new Pontiac went out of sight, not Mr. Caron, Mr. Caron's car suddenly swerved a little bit to the left and I told Mr. Caron that Mr. Hoakanson would go on and say that just as he, Hoakanson, saw Mr. Caron's car swing slightly to the left Mr. Hoakanson saw a car without lights coming up along the shoulder and that the two cars came together and reared up in the air with their front ends together and then settled down, and upon telling that to Mr. Caron, Mr. Caron said in substance, 'Well, that seems to explain how the accident happened.' "

A review of plaintiff's testimony with reference to the above three discrepancies satisfies us that the defendants, through their representatives and attorneys, should have known prior to the purported disqualifying cross-examination at the Anoka trial just before noon recess on March 26, 1954, that plaintiff's statements and testimony were either uncertain, different, or contradictory on those points. It would also seem that they had ample opportunity to observe the plaintiff's attitude and demeanor at the various interviews and times when statements were taken prior to the Anoka trial in order to determine if possible whether his statements were consistent or contradictory and whether he was telling what he reasonably believed to be the truth, with allowances for honest variations in recollection over a period of about 9 months from the date of the accident to the time of the Anoka trial.

While it would be naive to say that discrepancies did not exist in plaintiff's testimony, it is our opinion that it was a fact question whether those variations were intentional and material departures from the truth as plaintiff believed or reasonably believed the truth to be or whether they were reasonable differences and discrepancies of a person in observing, remembering, and reporting at different intervals the details of an accident in which he was injured and hospitalized.

■ The second issue in this case concerns the court's right to direct a verdict in favor of Farmers Insurance against Beehrle. Beehrle claims, among other theories, that his rights to recover in the instant case are derived from the right of the estate of Lester O. Moen to coverage by Farmers Insurance for a judgment rendered against its named insured, Lester O. Moen. It is Beehrle's contention that this liability cannot be affected by plaintiff's noncooperation.

Farmers Insurance claims, however, that the issue of Beehrle's right to recover from it through the estate of Lester O. Moen could not be and was not properly raised in Ramsey County District Court. It cites in support of this argument Twin City Milk Producers Assn. v. Oase, 199 Minn. 124, 271 N. W. 253; State ex rel. Jackson v. Willson, 230 Minn. 156, 40 N. W. (2d) 910. These cases hold that intervenors have no right to change the issues between the original parties and introduce into the action new and foreign issues. In his book on Minnesota Pleading, Pirsig, after stating the above holding and mentioning that the new rules of civil procedure are silent on this point, indicated that probably that principle will be relaxed. 2 Pirsig, Minn. Pleading (4 ed.) § 2031. Beehrle does not discuss the issue in his brief as to whether an intervenor may introduce a new issue in an action such as the one at bar.

We have reviewed the pleadings and record and do not feel that it is necessary at this time to decide whether the rule announced in the Twin City Milk Producers Assn. v. Oase, *supra,* and State ex rel. Jackson v. Willson, *supra,* should be modified as it appears doubtful, under the record here, whether the issue in question was sufficiently raised. Therefore, in view of our holding that this case should be retried, we feel that Beehrle should raise the issue in a separate proceedings and after doing so the trial court, in its discretion, may consolidate the separate proceedings with the new trial we have ordered.

Plaintiff also raises the question whether attorneys Warren King and Ira Peterson were competent and proper witnesses for the defendant. These reputable attorneys appeared for plaintiff and for Mutual Service and Farmers Insurance, respectively, until their withdrawal at the Anoka trial in March 1954. After being questioned as to whether he was directly associated in the trial of the present case, Mr. King assured the trial court that since the beginning of the actual trial of the case at bar he had terminated his relationship as attorney in this particular case until it was finished. On the further assurance that any fee charged by King for services rendered Mutual Service was before the beginning of this action and was not contingent upon the outcome of this trial and that he had made no charges for any services rendered since the beginning of this trial, the court permitted him to testify. Mr.

King stated that he was subpoenaed as a witness. He offered testimony in connection with various conflicts in plaintiff's statements and testimony prior to and at the Anoka trial, which conflicts have already been referred to in this opinion.

Mr. Peterson, the other attorney who was permitted to testify at the present trial, stated that he represented plaintiff and the estate of Lester O. Moen at the Anoka trial. He said that his appearance for those two parties was pursuant to a policy of insurance issued by the defendant Farmers Insurance. His testimony, previously referred to herein, went into detail as to conflicts in connection with the various statements given his law firm or the insurance companies prior to the Anoka trial and at the Anoka trial.

This court has repeatedly called attention to the impropriety of counsel becoming a witness for a client in a case which he is trying. Peoples State Bank v. Drake-Ballard Co. 164 Minn. 175, 205 N. W. 59; Ferraro v. Taylor, 197 Minn. 5, 265 N. W. 829; In re Estate of Stephens, 207 Minn. 597, 293 N. W. 90. We still admonish against such practice where the attorney knows in advance of the trial that important testimony which may be controlling will have to be provided by him as a witness at the trial. He should not act as both a witness and an attorney in such a case. From a practical standpoint, however, situations may occasionally develop in the actual trial of cases where it is necessary for an attorney to testify in order to properly protect his client's interest and assist in the furtherance of justice. Such instances are usually rare and under those circumstances it should be clearly within the discretion of the trial court to determine whether the testimony of an attorney is admissible. Hagerty v. Radle, 228 Minn. 487, 37 N. W. (2d) 819; see, also, McKercher v. Vik, 199 Minn. 263, 271 N. W. 489. In the instant case we find no prejudicial error in connection with the testimony of Mr. King and Mr. Peterson. Both disclaimed participation as attorneys in the case at bar and apparently satisfied the trial court accordingly. It is our opinion that the admissibility of their testimony was discretionary with the trial court.

Reversed and new trial granted.