C. JOSEPH JUVLAND AND OTHERS v. CHARLES PLAISANCE
AND ANOTHER.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, THIRD-PARTY DEFENDANT.

96 N. W. (2d) 537.

May 1, 1959—No. 37,611.

*Ryan, Kain, Mangan, Westphal & Kressel,* for appellants.

*T. J. Battis* and *Murnane & Murnane,* for respondent third-party defendant.

*Sawyer & Lampe,* for respondent plaintiffs.

NELSON, JUSTICE.

The personal injury actions here involved arose out of an accident that occurred on February 16, 1956, on a township road located in Dakota County when vehicles owned by C. Joseph Juvland and Charles Plaisance collided. Lenora Juvland, Judy Juvland, and Linda Juvland were all occupants of the Juvland vehicle, and Charles Plaisance and Richard Plaisance, his minor son, were occupants of the Plaisance vehicle. We are concerned on this appeal with one of the issues involved in the actions which was set apart for separate trial wherein Charles Plaisance and Richard Plaisance were defendants and third-party plaintiffs and State Farm Mutual Automobile Insurance Company was third-party defendant. The issue involves the cooperation clause of a liability automobile insurance policy issued to Charles Plaisance by State Farm Mutual Automobile Insurance Company. The cooperation clause reads as follows:

"* * * The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

The insurance company moved for summary judgment against third-

264

party plaintiffs pursuant to Rule 56, Rules of Civil Procedure. This motion was based upon all the then files and proceedings, together with a deposition of Charles Plaisance and supporting affidavits filed by the respective parties. The motion was granted and pursuant to said order judgment was duly entered and an appeal therefrom to this court was filed.

In the light most favorable to the nonmoving party, the facts so far disclosed by the record may be stated as follows: The insurance policy here involved was in full force and effect at the time of the accident. Charles Plaisance, with his son accompanying him in his truck, was engaged in picking up eggs from farmers on a local township road. Richard Plaisance, who was slightly short of 15 years of age, was driving at the time in question and was behind the wheel of the vehicle. His father was sitting in the middle of the front seat next to him directing his actions in the operation of the motor vehicle, telling him where to travel on the roadway, when to apply the brakes, when to start up, and specifically how to drive the vehicle. Richard was so operating the vehicle under his father's supervision and direction when the Plaisance vehicle collided with the Juvland vehicle at the crest of a hill. Charles does not know, according to his affidavit in opposition to the motion for summary judgment, whether or not he actually took over the steering wheel from his son at or just prior to the collision. As a result of the accident several occupants in the approaching car were seriously injured, one fatally, according to the deposition of Charles.

Because of the supervision and apparent control he exercised over his son in the driving of the vehicle when the accident happened, and to accept the responsibility which he thought was his and protect his son, Charles stated shortly after the accident that he was driving his truck, not only to the investigating officer but to the county attorney and also in a written statement to the defendant insurance company dated February 16, 1956. It appears that he directed his son to make a similar statement, but that the question of insurance protection did not enter into his decision to do what he did. The record indicates that none of the statements were under oath and that no statement in that regard was made either by the father or the son to anyone or at any time after February 29, 1956, which was less than 2 weeks after the accident.

Charles states that he told his wife on the day of the accident that he was not the driver and that a day or two later he confessed to his priest that he was not in reality the driver of the car at the time of the accident, but that he would have to conclude that his son was doing the driving. He was advised by his priest to see a lawyer and follow his advice. He immediately sought the advice of a lawyer who practices in Faribault, Minnesota, stating to him what he considered to be the true facts about the driving of his vehicle. His attorney advised him to state the exact facts to a representative of the insurance company when next contacted by it and, if not contacted again by the insurance company, then to make a full disclosure to it before trial.

In the meantime his attorney contacted the state insurance commissioner and found that protection had not been ruled out because of the vehicle being driven at the time of the accident by the 14-year-old son since any provisions which the policy may have contained forbidding the driving by an unlicensed driver or a minor had not been effective since August 1955. The insured had not been informed of the deletion of such provisions from the policy and had no knowledge of such deletion at the time he made the unsworn statements regarding the driver of his vehicle immediately following the accident. He assumed that he was proceeding properly in following the advice of his attorney and, when again contacted by a representative of the defendant insurance company—this time by one of its attorneys—he related the true facts about the manner in which the car was being driven when the accident occurred. Following this disclosure, the defendant insurance company took the position that Charles had breached the cooperation clause of his insurance contract. It set up as an affirmative defense in its answer that he had breached the terms and conditions of the policy by failing to cooperate with the insurance company; that he had knowingly, willfully, and with intent to deceive and defraud misrepresented material facts pertaining to the accident; and that such facts had been relied upon and acted upon by the insurer to its damage and detriment.

The question is whether the variance between the incorrect statements as to the identity of the driver in the first instance and what appears to be the correct statements made at a later date, before trial, were so substantial and material as to prejudice the insurer; and whether the

insurer relied and acted thereon to its detriment.

■ It is clear that the purpose of the automobile liability provision requiring insured to cooperate with insurer is to protect the insurer's interest. We think it equally clear under our decisions that the record discloses the existence of fact issues as to whether the alleged misstatements involved constitute a material breach of the cooperation clause and whether such breach was of such gravity as to have adversely affected insurer's interest in a substantial way.

What appears to be a majority rule is stated in 6 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 4059, p. 78, as follows:

"* * * in order that there may be a breach of the condition requiring the insured to co-operate with liability insurer, so as to avoid the latter's liability under the policy, lack of co-operation must be material; and it has been held necessary, in order to establish a defense under such a provision, that the insurer show that the failure of the insured to co-operate with it was of such gravity as to prejudice it, but there is authority to the effect that a violation releases the insurer regardless of actual prejudice."

The law applicable to cooperation clauses of insurance policies is stated in 5A Am. Jur., Automobile Insurance, § 134, p. 136, in the following language:

"* * * it is a material part of the policy * * * designed to afford the insurer an opportunity to defend, and to protect it against possible collusion between the insured and persons claiming covered damages; and, in the absence of waiver or estoppel, a substantial breach of such a provision resulting in prejudice to the insurer will relieve it of responsibility both to the insured and the injured third parties."

The insurance company's affirmative defense in the instant case is limited to general allegations that the insured willfully, and with intent to deceive and defraud his insurer misrepresented material facts pertaining to the accident and that he failed to cooperate with his insurer. This affirmative defense carries with it the burden of proof. It clearly suggests probable fact developments at trial determinable only by a jury or other factfinding tribunal.

Defendant insurance company places great reliance upon a leading

Minnesota case, Annis v. Annis, 250 Minn. 256, 84 N. W. (2d) 256. That case presents an entirely different situation with regard to facts claimed to have adversely affected insurer's interest. The case was tried to the court, and the court upon the facts found for the insurer. Plaintiff appealed from an order denying his motion for a new trial. This court affirmed the order of the trial court. Mr. Justice Matson, who wrote the decision in that case, made a clear statement of what the case involved and the applicability of the factfinding rule at the outset as follows (250 Minn. 258, 84 N. W. [2d] 258):

"This case involves the application of the elementary principle that whether an insured under a policy of automobile indemnity insurance has breached the cooperation clause is a question of fact and that the trial court's findings thereon will be affirmed on appeal if they are sustained by the evidence as a whole. Obviously, this rule is equally applicable whether the findings favor the insured or the insurer."

This court in the Annis case clearly stated that where the issue in a case is fraud and deception, as has been alleged in the defendant insurance company's answer, evidence must necessarily take a wide range, and even collateral facts are admissible if they have a logical tendency to throw light on such issue. This court has definitely held in several recent cases that whether the insured failed to cooperate under a policy of automobile indemnity insurance presents fact questions determinable by a jury or other factfinding tribunal. Caron v. Farmers Ins. Exch. 252 Minn. 247, 90 N. W. (2d) 86; Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855; 50 A. L. R. (2d) 108; Johnson v. Johnson, 228 Minn. 282, 37 N. W. (2d) 1.

Sometimes what would appear at first blush to be a breach of the cooperation clause may be excused if it develops that the failure of the insured was due to mistake and that it was not an exercise of bad faith on his part. Thus, what constitutes cooperation (or lack of it) on the part of the insured, within the meaning of the cooperation clause is usually a fact question. Litigation often, if not always, may prove uncertain as to ultimate results. That uncertainty, however, is after all dependent on an establishment of the facts, and often, when the required and permitted facts are established, the uncertainty may no longer exist. Therefore, the language used by a court ought to be construed in the

light of the facts thereto applied.[1]

■ There is also a familiar rule that a provision or a clause which has been introduced into the policy by the insurer for its own benefit must be construed, in case of ambiguity, most strongly against it; that inasmuch as the language of the insurance policy is that of the insurer, any reasonable doubt as to its meaning must be resolved favorably to the insured. 9 Dunnell, Dig. (3 ed.) § 4659; Cement, Sand & Gravel Co. v. Agricultural Ins. Co. 225 Minn. 211, 30 N. W. (2d) 341; Preferred Accident Ins. Co. v. Onali (D. Minn.) 43 F. Supp. 227, affirmed (8 Cir.) 125 F. (2d) 580.[2]

■ We think it clear under our decisions in this state that the breach of a cooperation clause in a liability insurance policy must be in some material or substantial respect. It is not sufficient for the defendant to allege that plaintiff failed to cooperate without setting out the particulars wherein he failed and thereby showing that the assured failed in some substantial or material particular or particulars to cooperate with and to assist the insurer in the defense of the action for damages covered by the policy. It is also recognized that the defense of the insurer on the ground of the insured's violation of the cooperation clause is an affirmative one on which the insurer carries the burden of proof.[3]

An examination of the record in the instant case, which includes supporting affidavits filed on the part of both litigants in the summary judgment proceedings, leads to the conclusion that the facts disclosed do not ipso facto constitute a breach of the insurance policy so conclusively as to justify the entry of a summary judgment in favor of the

[1]See treatment of general subject of cooperation clauses in Annotations, 72 A. L. R. 1446, 98 A. L. R. 1465, and 139 A. L. R. 771. It seems reasonably clear from an examination of the foregoing annotations that the determination of what constitutes a breach of the cooperation clause is usually a question of fact.

[2]For cases which have held that misstatements of the insured as to the identity of the person driving a car involved in an accident, withdrawn or corrected prior to the trial of the action against the insured, have been held not to constitute a breach of the cooperation clause, see Annotation, 34 A. L. R. (2d) 264, 272.

[3]Western Cas. & Surety Co. v. Weimar (9 Cir.) 96 F. (2d) 635.

defendant insurance company. Mere inadequacy or untruthfulness of the unsworn written statements containing alleged misstatements by the insured as to the identity of the person driving the car, which were later corrected prior to trial, does not standing alone necessarily constitute a material breach of the conditions of the policy requiring assured to cooperate with insurer or conclusively establish the same to the exclusion of a contrary determination by a trier of fact.[4]

Other Minnesota cases not heretofore cited clearly indicate that the reason for cooperation or similar clauses in an insurance contract has been consistently looked into by our court in determining their effect. This court has held that the breach of similar clauses must prejudice the insurer before such breach will void the policy. See, Williams v. Cass-Crow Wing Co-op. Assn. 224 Minn. 275, 28 N. W. (2d) 646; Gamble-Skogmo, Inc. v. St. Paul Mercury Ind. Co. 242 Minn. 91, 64 N. W. (2d) 380; 9 Dunnell, Dig. (3 ed.) § 4875E, p. 623.

■ A motion for a summary judgment may be granted pursuant to Rule 56.03, Rules of Civil Procedure, only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In scrutinizing the pleadings, depositions, admissions, and affidavits, if any, on file, all doubts and factual inferences must be resolved against the movant and in favor of the party opposing the motion. McCuller v. Workson, 248 Minn. 44, 78 N. W. (2d) 340; Sauter v. Sauter, 244 Minn. 482, 70 N. W. (2d) 351; Abdallah, Inc. v. Martin, 242 Minn. 416, 65 N. W. (2d) 641.

It is our view that the instant case presents a fact question on the issue of whether or not the insured materially or substantially breached the cooperation clause of the policy, in the light of what the surrounding facts and circumstances thus far disclose by the record submitted; whether the alleged breach of the cooperation clause by the insured was substantially material under all the facts and circumstances to the

---

[4]Petersen v. Preferred Accident Ins. Co. 114 N. J. L. 180, 176 A. 897; Hardware Mutual Cas. Co. v. Mitnick, 180 Md. 604, 26 A. (2d) 393; Pacific Ind. Co. v. McDonald (9 Cir.) 107 F. (2d) 446, 131 A. L. R. 208; Standard Accident Ins. Co. v. Winget (9 Cir.) 197 F. (2d) 97; General Accident Fire & Life Assur. Corp. v. Rinnert (5 Cir.) 170 F. (2d) 440; Rochon v. Preferred Accident Ins. Co. 118 Conn. 190, 171 A. 429.

extent of prejudicially misleading the insurer, to its detriment, in defending the actions which arose out of the accident. We therefore conclude that the governing practice applicable to the entry of summary judgments requires a reversal in this case.

Reversed.