Frank W. PATTERSON,
Plaintiff,

v.

Robert M. PATTERSON,
Defendant,
and
Empire Fire and Marine Insurance
Company, a Nebraska corporation, Garnishee.

No. 3–58 Civil 82.

United States District Court
D. Minnesota,
Third Division.

Nov. 27, 1959.

Robins, Davis & Lyons, by Solly Robins and Willard Converse, St. Paul, Minn., for plaintiff.

John J. Kotlar, St. Paul, Minn., for defendant.

Schermer, Gensler & Shields, by Irvin E. Schermer, Minneapolis, Minn., for Garnishee.

DONOVAN, District Judge.

The Court has jurisdiction in this diversity action.

Plaintiff recovered a verdict against defendant for $8,000 in this Court in an action for personal injuries arising out of an automobile accident while he was a guest passenger in defendant's car, and which plaintiff attributed to the negligence of defendant. Judgment was entered in favor of plaintiff and against defendant.

Plaintiff thereupon garnished Empire Fire and Marine Insurance Company (hereinafter referred to as Empire), and upon supplemental pleadings, Empire's liability was tried before the Court.

By answer, Empire admits that prior to and at the time of the accident (August 10, 1957), defendant was operating an automobile insured by Empire against liability for bodily injury to another arising out of the ownership or use of defendant's automobile. Empire also admits that plaintiff was a passenger in the insured automobile when it left the paved portion of the roadway and collided with a tree, causing personal injury to plaintiff, following which action was commenced, tried and judgment entered as above set forth, no part of which has been satisfied.[1]

Empire denies it is liable under the insurance contract, because of assured's alleged failure to comply with the cooperation clause of the insurance policy.

Plaintiff offered Exhibit 1 (Clerk's file in the personal injury action tried before Judge Robert C. Bell) and Exhibit 2 (Empire's letter of acceptance of defendant's proffer of defense under the insurance policy providing for $10,000 coverage), which were received, and thereupon plaintiff rested.

From this point on in the case at bar, Empire assumed the factual burden of proving its claimed nonliability under the cooperation clause of the insurance contract.

Contending that the insured defendant failed to cooperate with Empire by concealing material facts and for collaborating with the plaintiff, Empire offered in evidence Exhibit D, the first statement based on Empire's questions in its printed form propounded by its agent and the answers of the insured written in by said agent a day or two following the accident. This was followed by Exhibit A, a second statement purporting to have been given by the insured and signed by him on September 13, 1957. Neither statement is out of character for an insured layman. "Dozing" at the wheel (the basis for Empire's claim of noncooperation) was not covered in either statement.

During the trial of the personal injury action before Judge Bell and a jury[2] the insured testified as follows:

"Q. * * * Now, sir, will you tell us what happened as you drove north and in the four blocks intervening between the Shriners' Hospital and the place where this accident occurred? A. As I recall, in passing the Shriners' Hospital, I dozed off.

"Q. Did you notice what your brother was doing? A. My brother had been dozing all along. To the best of my recollection, he was asleep.

"Q. Actually, are you aware today of what occurred between the Shriners' Hospital and immediately before the accident, or were you

1. 37 Minnesota Statutes Annotated, § 571.-51; Johnson v. Johnson (Indemnity Ins. Co. of North America, Garnishee), 228 Minn. 282, 37 N.W.2d 1.

2. See Empire's Exhibit B, pages 10, 11, 35, 36.

somewhat dozing off, too? A. I dozed off and when I suddenly woke up I saw the lights of an oncoming car.

"Q. The lights of an oncoming car? A. Yes.

"Q. I thought you said that it was broad daylight at that time. A. As I recall, this car had its lights on.

"Q. How far away was it when you suddenly became aware of this car that was coming towards you? A. I would judge about a block away.

"Q. What did you do? A. Well, when I pulled my head up out of the doze, I was watching the car, and at the same time, in the same split second, my car was careening into the curb, or to my right.

"Q. What happened? A. Well, at that precise moment I landed up against a tree."

The foregoing was corroborated by Police Officer Donald H. Vick, as follows:

"Q. Did you talk to the driver of that Patterson car? A. Yes, sir.

"Q. What did he tell you? A. I questioned the driver on two different occasions. The first occasion was at the scene of the accident. I could not get very much information from the driver at the scene because of his concern for his brother's injuries. He did not care to talk at all to the police. I told him I would question him down at the hospital after—he wanted to find out how serious his brother was hurt. I questioned him at the hospital and he stated his speed there to be 25 to 30 miles per hour. I asked him if he was sure he hadn't been going faster than that and he said, No, I was in the speed limit, 25 to 30. I asked him how much he had had to drink, because I could smell a moderate odor of alcohol on his breath, alcohol spirits. The defendant stated he had drank the night before; that he had nothing shortly before the accident. I asked him what time he had his drinks and he told me they were between ten p. m. the night before and twelve-thirty a. m. that morning. Twelve-thirty a. m. was the last time he had a drink.

"Q. Did he tell you what happened out there on the roadway? A. I asked him what happened on the roadway and he was evasive. He could not give me an answer as to exactly what had happened. He said he didn't exactly know what happened. He said the first thing he knew he was up over the curb and he hit the tree.

"Q. Did he say anything about what his condition was just shortly before he went over the curb? A. Well, he said that he was tired.

"Q. Did he say anything about having fallen asleep? A. He thought that is what might have happened. He said he was sure it wasn't whiskey and the mix he had the night before, and he was sure it wasn't the speed. He said that's the only thing he could think of that might have caused the accident.

"Q. What? A. His dozing at the wheel."

Officer Vick and the insured testified in the Minneapolis traffic court where the insured was charged with reckless driving. The dates of the occurrence of the accident, the signing of the reports and statement taken on behalf of Empire on the one hand, and the hearings before Judge Bell and in the Minneapolis traffic court, are all relative matters, and all of which Empire was cognizant of through its agents and the diligent practice of its personnel in pursuing cause and effect, where Empire has issued insurance coverage for the instant type of accident.

In support of its contention of non-cooperation by the insured, Empire called as a witness Mr. Sheldon J. Gensler, who is counsel of record for Empire, and who prepared the personal injury case for trial before Judge Bell. Mr. Gensler tes-

tified that the insured came into his office on November 30, 1957, together with the attorney (a Mr. John Kotlar) the insured retained as suggested by Empire [3], and that Kotlar inquired about the desirability of settlement, as Kotlar had been given to understand that prior to the accident the insured had been dozing at the wheel. This was consistent with the testimony of the insured and officer Vick, as given in the traffic court case in August, 1957.

The issues in the instant case are as follows:

(1) Does the record establish such a material variance between the pre-trial statements made by the insured and his testimony as to make void his coverage under the insurance contract?

(2) If such variance exists, did Empire waive the claimed defense of breach of cooperation to such an extent as to estop it from asserting such defense in this garnishment proceeding?

■ The law of Minnesota governs disposition of the instant case.[4] The issues of breach of contract and waiver are fact issues.[5]

■ In construing the provisions of the insurance policy, it is well-established Minnesota law that it is to be construed strictly against the insurer and liberally as to the insured.[5] The test of compliance or noncompliance by the insured with the cooperation clause of the policy requires the trial court to search out the facts in the case at bar which demonstrate to the trier of the facts that the insured did nothing of a material nature for the purpose of aiding or in-

juring the insurer by intentionally departing from the truth as the insured knows, or reasonably believes, the truth to be.[6] The standard of cooperation is not impaired by slight variations or discrepancies between pretrial statements and testimony at trial.[7]

■ Whether the cooperation clause has been complied with by the insured is a question of fact. Empire's claim of lack of cooperation is based upon said discrepancies between statements taken by the garnishee before trial of the principal case and testimony at that trial. Despite Empire's assertion that the discrepancies were intentional to such an extent as to violate the cooperation clause, it is only natural that there should be some overlooked details that amount to variances between the statements taken by the insurer before trial and the insured's testimony. Liability on an insurance policy may not be repudiated on the type of variance relied on in the present case.[8]

To paraphrase counsel's brief, "the loss of control of a vehicle occasioned by the driver's dalliance in the arms of Morpheus", is a common cause of the instant type of motor vehicle accident on our highways in this so-called progressive age of radar, split atoms and the mixing of alcoholic beverages with gasoline engines. Empire's agents and claim agents are no doubt well versed in such pertinent interrogatories as, "Were you awake? If you were awake, were you sober? If you were awake and sober, what caused you to lose control of the car?" At twilight, after dark, or just before dawn, is the commonplace aura of

3. See Exhibit 2.

4. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Wood v. Gas Service Co., 8 Cir., 245 F.2d 653, 657.

5. Peterson v. Maloney, 181 Minn. 437, 232 N.W. 790, 791.

6. Annis v. Annis, 250 Minn. 256, 84 N.W. 2d 256.

7. Caron v. Farmers Insurance Exchange, 252 Minn. 247, 90 N.W.2d 86.

In the Caron case the Supreme Court of Minnesota held the alleged inconsistencies of the insured immaterial. The facts in that case are strikingly similar to the instant case.

8. Johnson v. Johnson, supra; Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R.2d 108; American Service Mutual Insurance Co. v. Pugh, 8 Cir., 271 F.2d 174; Lumbermens Mutual Casualty Company v. Chapman, 4 Cir., 269 F.2d 478.

entrapment for the weary driver. If he knew he were dozing, he would be awake to some extent.

In my opinion the change in the claimed versions between the statements recorded by the insurer and testimony of the insured in the case at bar were not material, substantial or prejudicial, within the purview of the controlling law.

Plaintiff may submit findings of fact, conclusions of law and form of judgment.

Exceptions are allowed.