**PEERLESS HOSIERY CO., Inc. v. NORTH-
ERN INS. CO. et al.**

Civ. A. No. 3392.

United States District Court
D. Connecticut.

May 9, 1952.

Klein & Klein, New Haven, Conn., for plaintiff.

John C. Flanagan, New Haven, Conn., for defendant.

HINCKS, District Judge.

The defendants have suggested four different grounds on which they contend they should be granted a judgment.

■■ 1. They contend that the plaintiff's failure to give written notice of loss or to file proofs of loss clearly is a bar to the action. This defense is overruled. It is true that the policies were intended to make the giving of such notice and the filing of proofs a condition precedent to recovery. Fields v. Metropolitan Life Ins. Co., 1946, 132 Conn. 588, 46 A.2d 127. However, such a requirement may be waived. The defendants' agent, Moakley, testified that he had no recollection of any conversation on December 8 in which he denied liability for the plaintiff's losses of December 7–8, but the plaintiff's president and its agent both gave positive testimony as to such conversations and I believe it more reasonable to find for the plaintiff as to this. A denial of liability of the sort testified to by these witnesses suffices as a waiver of the requirements of notice and

proof of loss. Rathbone v. City Fire Insurance Co., 1862, 31 Conn. 193; cf. Haskell v. Eagle Indemnity Co., 1929, 108 Conn. 652, 144 A. 298; DiFrancesco v. Zurich General Accident & Liability Ins. Co., Ltd., 1926, 105 Conn. 162, 134 A. 789; Bernhard v. Rochester German Insurance Co., 1906, 79 Conn. 388, 65 A. 134. Hence the plaintiff's failure in this regard should not bar its recovery.

2. The defendants argue also that the plaintiff's claim is for damage which, since it occurred some twelve days after the hurricane, was outside the coverage of the policy. They contend that this lapse of time in and of itself sufficed to make the loss indirect. It is stated in the policies that the coverage includes "direct loss by windstorm." The limitation to "direct" losses is no more than an embodiment into the policy of the prevailing common law rule. Fogarty v. Fidelity & Casualty Co., 122 Conn. 245, 188 A. 481. However, in the law of insurance, as in the law of torts, the amount of time elapsing between cause and result is not necessarily conclusive as to the proximateness or directness of the result. Insurance Co. v. Boon, 1877, 95 U.S. 117, 24 L.Ed. 395; Mahoney v. Beatman, 1929, 110 Conn. 184, 147 A. 762, 66 A.L.R. 1121. The plaintiff offered uncontradicted testimony by two contractors tending to show that it was exceedingly difficult to obtain the services of roof repairmen in New Haven in the period immediately after November 25, 1950. The roof of the building occupied by the plaintiff apparently was repaired with all reasonable speed. Under the circumstances I hold that the mere lapse of time between November 25 and December 7–8 did not take plaintiff's claim outside the coverage of the policy.

3. But I must sustain the defense based upon the plaintiff's failure to comply with the requirement that it "protect the property from further damage." See Finding No. 6(a). This requirement is set out in the same paragraph of the policy as the requirement that the insured shall give written notice of loss and shall file proofs of loss. Clearly it too, like the requirement of filing proofs of loss, was intended to create a condition precedent to recovery. Taubman v. Allied Fire Ins. Co. of Utica, 4 Cir., 1947, 160 F.2d 157; New York Underwriters Fire Insurance Co. v. Malham & Co., 8 Cir., 1928, 25 F.2d 415; cf. Fields v. Metropolitan Life Insurance Co., supra.

The evidence established that during a windstorm occurring on or about November 25, 1950 more than half the roof was blown off the building in which the plaintiff did business. The storm was accompanied by rain, some of which entered the building through the hole in the roof and penetrated to the plaintiff's store on the first floor, and at that time some of the plaintiff's goods suffered water damage. Prior to December 7, 1950 the plaintiff and the defendants agreed that the damaged goods had a value of $12,114.24 and they were then removed from the premises by the defendants. Others of the plaintiff's goods had not been damaged in the storm of November 25 and these were left in the store. Meanwhile, the owner of the building was experiencing difficulty in obtaining repairs to his roof and as of December 7–8 the hole was covered only by loose boards and tarpaulins. The plaintiff's president knew of this condition and knew, or should have known, that such a covering would not protect the interior in case of a heavy storm. On December 7–8 such a storm occurred and once again, in the same manner, some of the plaintiff's remaining goods, valued at $3,128.33, suffered water damage.

In this state of the facts, the defendants contend, the plaintiff should not be allowed to recover for its loss of December 7–8 because it failed properly to protect its goods after the initial loss of November 25. The policy provision relied on by the defendants has never been construed by the Connecticut courts so far as I can discover. The cases in the federal courts in which insurance companies have attempted to rely on such a provision have, in contrast to the present case, involved disputes as to whether the insurer was liable for any part of the initial loss where the insured failed to comply with this requirement. New York Underwriters Fire Insurance Co. v.

Malham & Co., supra; Thornton v. Security Ins. Co., C.C.M.D.Pa.1902, 117 F. 773. And here, as I have already held, the loss in December, notwithstanding the time which intervened, was the proximate result of the windstorm in November. It follows that if nothing but a lapse of time had intervened, the December damage would have been recoverable.

But the fact is that under the express provisions of the contract, after the hurricane there intervened as a condition of recovery a duty on the part of the plaintiff "to protect the property from further damage." Doubtless this was not an absolute duty. But I construe the language of the contract to impose upon the insured as a condition of recovery at least a duty to use reasonable care to protect the property. Without this minimum content, the provision would be meaningless. Thus we are brought to the question whether the plaintiff used such care.

It is the defendants' position that in the existing situation the plaintiff should have had these goods removed from the store until after the roof was repaired, or at least have had them covered with tarpaulins. The plaintiff concedes that it did neither of these things. However, the undamaged goods were moved to a part of the store in which there had been no water damage on November 25, and it is the plaintiff's position that this was a sufficient compliance with the requirement of the policy. As to the suggestion that its goods should have been removed from the building until it was repaired, it states that in order to carry on its business it had to have its goods available for display to customers. It argues from this that it could not reasonably have been required to move its goods since this, it asserts, would have forced it to suspend business. As to the suggestion that it should cover its goods with tarpaulins, it states that its goods were of such a nature that they could not be so covered. But the plaintiff's argument is specious: the policy did not purport to insure against all suspensions of business.

The record contains very little evidence as to the point, but on the basis of the available facts it is my conclusion that immediately prior to December 7 the plaintiff should have realized that a mere removal of its undamaged goods to another part of the store would not adequately protect them against further damage. The store was on the first floor of a four-story building which had had more than half its roof blown away. Unless the building was constructed in such a way as to impose a waterproof floor or wall between the roof and part of the plaintiff's store there was no reasonable basis for confidence that any part of the store would be immune from water damage. Since the burden is on the insured to prove compliance with a condition precedent in the policy, Benanti v. Delaware Insurance Co., 1912, 86 Conn. 15, 84 A. 109, I cannot, without evidence, find that such a waterproof structural condition existed. And evidence of such a condition is wholly lacking.

Thus I come to the conclusion that the plaintiff failed to take measures reasonably required to protect its goods after the loss of November 25. Since such action on its part constituted a condition precedent to its right to recover, its failure in this regard compels a decision for the defendants.

My decision on this point in effect disposes of the case. However, the record discloses another defense which is equally dispositive.

4. The plaintiff's present claim is also barred by a valid accord and satisfaction. The defendants tendered, and the plaintiff accepted, payment in the amount of $6,057.-12 as compensation for losses suffered by the plaintiff as a result of the windstorm of November 25. In total the amounts paid to the plaintiff were equal to the value of the plaintiff's goods which were destroyed in November. The payment was made in February, 1951, subsequent to the plaintiff's additional loss in December.

There can be a valid accord and satisfaction only when there is a dispute as to the amount due. The plaintiff argues that because the goods which were damaged on November 25 had been inventoried at $12,114.24 prior to December 7 and be-

cause the parties were in full agreement that this was the amount to which it was entitled for such damage, the defendants' liability for that damage had thereby become fully liquidated prior to December 7, and hence there was no possibility of an accord and satisfaction. However, "Where it is admitted that one of two specific sums is due, but there is a dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction." Hanley Co., Inc. v. American Cement Co., 1928, 108 Conn. 469, 473, 143 A. 566, 567; Perryman Burns Coal Co., Inc. v. Seaboard Coal Co., Inc., 1941, 128 Conn. 70, 20 A.2d 404.

In the Hanley case the defendant had purchased a number of loads of brick from the plaintiff. The parties were in agreement as to the defendant's liability to pay for all the brick except four thousand circular bricks at $100 per thousand. Payment was tendered by the defendant for all the bricks except those involved in the dispute. The plaintiff accepted and the court held that there had been a valid accord and satisfaction. In the present case the parties were agreed as to the defendants' liability to pay for the loss of November 25 but not as to the loss of December 7–8. The situation therefore was in practical effect identical to that in the Hanley case and I am compelled to find that the amount owed by the defendants to the plaintiff was unliquidated within the meaning of Connecticut law.

The debtor, in order to reply on the defense of accord and satisfaction, must make known the intended effect of an acceptance of his tender of payment "in some unmistakable manner so that he (the creditor) is bound to understand that, if he takes it, he takes it in full satisfaction of his claim." Keller v. Rohde, 1929, 109 Conn. 244, 248, 146 A. 288, 290. However, that requirement also was satisfied here. The drafts issued by the defendants to the plaintiff both stated on their face that they were in full payment of all claims for loss by the wind which occurred on November 25, 1950 and there was a printed statement on the reverse thereof to similar effect. I cannot imagine a clearer or more unmistakable statement of the defendants' position. Cf. Perryman Burns Coal Co., Inc. and Hanley Co., Inc. v. American Cement Co., both cited supra. I conclude therefore that the plaintiff's claim has been extinguished by a valid accord and satisfaction.

### Findings of Fact

1. Plaintiff is a corporation organized under the laws of the State of Connecticut; the defendant the Ohio Farmers Insurance Company is a corporation organized under the laws of the State of Ohio, and the defendant the Northern Insurance Co. is a corporation organized under the laws of the State of New York. The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

2. The plaintiff is engaged in the business of buying and selling men's and ladies' wearing apparel at wholesale, and leases a store at 244 Congress Avenue in New Haven where on November 25, 1950 it had a stock of merchandise valued at $40,000. Said building contains four floors, consisting of a store on the first floor, twenty by fifty feet in length, and apartments on the other three floors. The plaintiff under the terms of its lease was not required to make any extensive repairs to the said building.

3. The defendants are authorized to insure risks by fire and storm under the laws of their respective states, and were admitted and authorized to transact insurance business in the State of Connecticut, and had duly authorized the Insurance Commissioner of the State of Connecticut as their attorney upon whom process against them might be served.

4. On January 4, 1950, in consideration of the sum of $206.52 paid to each of the defendants by the plaintiff, the said defendants executed to the plaintiff policies of insurance through their General Agent, The Ralph Blumberg Co., on the plaintiff's merchandise in said store, insuring it against specified sorts of injury, said policies each being in the amount of $18,000.

The coverage of these policies included "direct loss by windstorm."

5. Said policies of insurance contain the following:

"This Company shall not be liable for loss to the interior of the building or the property covered therein caused, (a) by rain, snow, sand or dust, whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then shall be liable for loss to the interior of the building or the property covered therein as may be caused by rain, snow, sand or dust entering the building through openings in the roof or walls made by direct action of wind or hail or (b) by water from sprinkler equipment or other piping, unless such equipment or piping be damaged as a direct result of wind or hail."

6. Said policies provide further:

"This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by * * *

"(i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in a neighboring premises.

6(a) Said policies provide further:

"Requirements in Case Loss Occurs. The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; *and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss.*"

7. On November 25, 1950, as a direct result of a windstorm of hurricane force, more than half of the roof and part of the skylight and gutters of the building known as 244 Congress Avenue, New Haven, were blown off, and a substantial number of the boards underneath the roof were blown away. Said hurricane was accompanied by heavy rains, and as a result plaintiff's merchandise was damaged by the water which entered the said building through the damaged roof and ran down and upon said merchandise insured under the terms of said insurance policies. Heavy rains occurred also on December 7 and 8, 1950 and at that time additional merchandise of the plaintiff was damaged by water coming into the building through the holes in the roof caused by the windstorm of November 25, 1950. The property damaged in the rainstorm of December 7th and 8th was of the sort intended to be covered by the policies in question.

8. On November 26, 1950 the landlord of the building at 244 Congress Avenue caused the holes in the roof to be covered with tarpaulins in order to protect the interior of the building from further rain damage. However, the protection afforded by the tarpaulins was of a temporary sort at best and the occupants of the building should have expected that they would not suffice to protect the interior in case of heavy rains.

9. Proper repairs to the roof of said building were not completed until December 13, 1950. The delay was caused by the landlord's inability to obtain the services of a contractor who could complete the task at an earlier time.

10. On November 26 the president of the plaintiff, who was in active charge of its business, fully realized that the damage to its property occurring on November 25 had been caused by rain entering the building through the holes in the roof. During the period of November 26, to December 8 he was in a position to and did in fact know the condition of the roof as it then existed. He knew or should have known that throughout that period there

was a continuing danger of further rain damage to his company's goods.

11. There is no evidence of any storm of wind velocity at any time during the period in question other than that of November 25, 1950.

12. On November 26, 1950 the plaintiff notified its insurance agents, the Ralph Blumberg Company, that some of its merchandise had been damaged as a result of the windstorm. As a result the plaintiff's place of business was inspected by a Mr. Francis J. Moakley of Leo E. Bronston, Inc., adjusters and duly authorized agents of the defendants. He and the plaintiff's president made arrangements for inventorying and removing the damaged goods. Thereupon the goods were in fact inventoried by the defendants at a value of $12,114.24, based on their cost to the plaintiff, and removed prior to December 7, 1950.

13. On or about November 28, 1950 the defendants' agent, Mr. Moakley, informed the plaintiff's president that the roof was in bad condition and that the defendants would not be responsible for further damage to the plaintiff's goods resulting from the condition.

14. The plaintiff did nothing about protecting its goods from further rain damage other than to move them to a part of the store away from the area of the ceiling where water had entered during the storm of November 25th. After knowledge of the defective condition of the roof, the plaintiff failed to use reasonable care for the protection of its property.

15. On December 8 both the plaintiff's president and its insurance agent, Mr. Blumberg, orally informed Mr. Moakley, the defendant's agent, of the further damage to the plaintiff's merchandise caused by the storm of December 7 and 8. At that time Moakley told them that the defendants were not liable for this further damage and thereby waived the insurers' right to written notice of the claim for further damage.

16. It is agreed by the parties that the storm of December 7–8 caused damage to the plaintiff's goods in the amount of $3,128.33.

17. On January 10, 1951 plaintiffs filed proofs of loss with the defendant companies which stated on the face thereof that the "whole damage" due to the windstorm of November 25, 1950 was $12,114.24.

18. On February 19, 1951 a draft in the amount of $6,057.12 was issued to the plaintiff by the defendant Northern Insurance Company which stated on its face that it was in "full payment, satisfaction, compromise and discharge of all claim for loss or damage by wind which occurred on the 25th day of November 1950." On February 27 a draft in the same amount was issued to the plaintiff by the defendant Ohio Farmers Insurance Co. which stated on its face that it was in "full payment and compromise settlement of all claims for loss or damage by wind occurring on or about the 25th day of November, 1950." On the reverse of both these drafts, just above the place for endorsement, appeared a printed statement that the draft was in full settlement either of all claims whatsoever against the insurer or all the claims shown on the other side.

19. Said drafts were endorsed and deposited by the plaintiff and in due course it received credit in the indicated amounts on its bank account.

20. The plaintiff's endorsement of these checks was in form without reservation or qualification. Although the plaintiff stated that it believed that the drafts were in settlement only of its claims for damage occurring on November 25, it did not in any way indicate its position in this regard to the defendant either at the time that the proofs of loss were filed or when the drafts were received and deposited. The plaintiff did not return the drafts or offer to return them and it did not credit them on its books as having been received "on account".

21. The plaintiff did not file proofs of loss covering the damage of December 7 and 8, 1950, nor did it give the defendants written notice of said loss, at least until a time subsequent to 60 days from December 8, 1950.

'Conclusions of Law

1. As a condition precedent to recovery on the policies, the plaintiff was required to give written notice of loss to the defendants and to file proofs of loss. However, such a condition is deemed waived by an unequivocal denial of liability by the insurers.

2. The requirement (in case loss occurs) that "the insured shall protect the property from further damage" must be construed to mean that an insured, after learning of a particular hazard, must take "reasonable" measures for the further protection of his goods and so construed was intended to create a condition precedent to insured's right to recover for further damages.

3. In limiting the coverage to "direct" losses by windstorm, the parties intended only to exclude non-proximate results of such storms. The length of time elapsing between the storm and the loss in the instant case would not in and of itself suffice to make the loss indirect. The loss was therefore within the general coverage of the policy.

4. A binding accord and satisfaction may be entered into between a debtor and creditor whenever the amount owned is unliquidated. Under Connecticut law, the amount owed by the defendants to the plaintiff as a result of the windstorm of November 25, 1950 was unliquidated at the time that the defendants tendered payment. The drafts used in making payment sufficiently indicated to the plaintiff that they were intended to be in full settlement of all liabilities growing out of the storm of November 25, 1950. By accepting and cashing these drafts, therefore, the plaintiffs entered into a valid accord and satisfaction with the defendants, by means of which all of the defendants' liabilities growing out of the storm of November 25, were extinguished.

5. The defendants are entitled to judgment and their costs.

The Clerk will enter judgment accordingly.