**AMERICAN NATIONAL BANK AND TRUST COMPANY, as Trustee under Trust Agreement, No. 11152, Plaintiff-Appellant,**

v.

**AETNA INSURANCE COMPANY, a corporation, et al., Defendants-Appellees.**

No. 18641.

United States Court of Appeals, Seventh Circuit.

Aug. 17, 1971.

---

3. The corresponding Illinois provision is found in S.H.A. ch. 26 § 2–306(1).

George C. Rabens, Rabens, Formusa & Glassman, Chicago, Ill., for plaintiff-appellant.

John P. Gorman, Fredric H. Stafford, James T. Ferrini, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for defendants-appellees.

Before KNOCH, Senior Circuit Judge, and KERNER and STEVENS, Circuit Judges.

KNOCH, Senior Circuit Judge.

Plaintiff-appellant, American National Bank and Trust Company, as Trustee under Trust Agreement, No. 11152, brought suit in the District Court to recover damages of $75,000 (plus interest and attorneys' fees for vexatious delay) consequent on collapse of the roof of plaintiff's garage building in Chicago, Illinois, on January 27, 1967. Plaintiff sued the defendants-appellees, Aetna Insurance Company, a corporation; National Surety Corporation, a corporation; International Insurance Company, a corporation and Citizens Insurance Company of New Jersey, a corporation; as insurers under their several insurance policies covering the premises. After trial by jury, judgment was entered for the defendants, from which plaintiff has taken this appeal.

The policies in question provide coverage of the type designated as "fire and extended coverage." They all provided insurance against direct loss by windstorm, except as the policies each thereinafter provided. With respect only to "Windstorm and Hail", all the policies contained an express exclusion from the windstorm and hail coverage that the insurers would not be "liable for loss caused directly or indirectly by * * * snow * * * whether driven by wind or not." [1]

On January 27, 1967, the date alleged in the Complaint, Chicago was in the midst of the heaviest snowfall in its history. Defendants contended that the heavy snow accumulation alone caused

---

[1] "Provisions Applicable Only to Windstorm and Hail: This Company shall not be liable for loss caused directly or in-directly by frost or cold weather or ice (other than hail), snow or sleet, whether driven by wind or not."

the collapse, or (if there was a windstorm) combined with it, so that the collapse was specifically excluded from coverage under these policies.

Expert witnesses gave conflicting views, presenting an issue of fact for the jury on the cause of the damage for which recovery was sought.

Plaintiff argues that the provisions in the policies created an ambiguity which must be resolved favorable to the plaintiff insured, under Illinois law.

Plaintiff sees such ambiguity because the policies insure the plaintiff against direct loss by windstorm and then provide that the companies shall not be liable for loss caused directly or indirectly by snow whether driven by wind or not, making no references to occurrences attributable both to covered and excluded perils.

Plaintiff cites numerous cases wherein damage was found due to possible combinations of covered and not covered perils in which the covered peril was, nevertheless, an efficient or proximate cause. We find these cases inapplicable.

■ We see no ambiguity in the policy provisions. Windstorm loss is covered but that coverage is subject to further provision. Losses due to snow are not just generally excluded from the policies. The policies provide, with specific reference to windstorm and hail, a specific exclusion from liability for direct loss by windstorm when snow is a direct or indirect cause. Similar wording has been found to be clear and unambiguous in Wasson v. Insurance Company of North America, 1960, 25 Ill.App.2d 35, 38, 165 N.E.2d 528; Feehrer v. Fidelity and Casualty Co., 1914, 188 Ill.App. 398; Newark Trust Co. v. Agricultural Insurance Co., 3 Cir., 1916, 237 F. 788, 792;

Brindley v. Firemen's Ins. Co., 1955, 35 N.J.Super. 1, 113 A.2d 53.

Plaintiff would distinguish these cases on their facts or the nature of the proof offered at trial. However, the cases do indicate that wording such as we have in the policies before us presents no ambiguity.

■ The defendants contend that plaintiff is precluded from arguing in this Court any objections to jury instructions given or rejected at the trial, because of failure to comply with Rule 51, Fed.Rules of Civil Procedure [2] in that plaintiff's counsel did not object to specific instructions (stating distinctly the matter and grounds of such objection) making instead only general objections.

We would agree with defendants were it not for the fact that in the course of colloquy with respect to the instructions, the Trial Judge said repeatedly that plaintiff's objections had been noted for the purpose of protecting the record and that the record was protected, discouraging detailed objections by plaintiff. We have therefore considered plaintiff's objections to the instructions.

■ The plaintiff argues that the jurors were improperly instructed that Plaintiff could not recover unless the loss resulted solely from windstorm, rejecting plaintiff's proffered instruction that plaintiff was entitled to recover if wind was the efficient cause without which loss would not have occurred even though other causes contributed to the damage.

Plaintiff would have us draw an analogy from Bull v. Sun Life Assurance Corporation, 7 Cir., 1944, 141 F.2d 456, where the insured decedent was in the

2. Rule 51. Instructions to Jury: Objection

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

course of making his escape from a downed aircraft afloat on the ocean, in which he had been engaged as a pilot on patrol duty in the South Pacific. The downed aircraft, which was incapable of flying again without repairs, was strafed by an enemy seaplane. The policy under consideration provided that death directly or indirectly resulting from service, travel or flight in any aircraft as a passenger or otherwise, was a risk not assumed.

Judge Minton writing the opinion for the majority said (p. 457) that the Court was faced with a legal question which required construction of the contract of insurance and that it was elementary that such contracts were strictly construed against the insurance company. The majority opinion gave consideration (p. 458) to the circumstances of the time of the policy application, i. e., war was raging in Europe, our relations with Japan were strained, the United States was expanding her defense program, and the applicant for insurance was a Naval Aviation Cadet. The aviation clause was inserted in the policy but no war clause. The majority concluded that the insurer was willing to assume all risks of war not connected with service, travel, or flight in aircraft. The Court held (p. 459) that the evidence supported the view that (disengagement from the flight having taken place) death resulted directly from the strafing. The opinion held that the policy excluded the risk of "death as a result, directly or indirectly of service

* * * in * * * aircraft." Death, the Court held, in this instance resulted directly from the strafing. The Court stressed the fact that the policy dealt with *results* not causes or contributing causes.* However, we do not find *Bull* (or cases like it) helpful in this instance where the policy does exclude a loss directly or indirectly caused by snow even if windstorm is a contributing factor.

Although there was evidence of both wind and heavy snow, any damage caused by the snow, even though driven by wind was specifically eliminated by the policy. There was no question of proximate cause for the jury.

■ We have also examined the instructions, having in mind plaintiff's complaints of prejudice. The Court instructed the jury that the defendant insurer was entitled to the same fair and unprejudiced treatment as an individual in like circumstances.[3] Plaintiff says no similar instruction was given respecting the corporate plaintiff. But the trust beneficiary testified early in the trial, told the jury of his interest in the case, and was frequently present in Court during the trial.

■ Plaintiff contends that repetitious instructions were given respecting its burden of proof. Actually the Court twice described the burden of proof in this specific case, once in general terms[4] and again after reading directly from the policy,[5] pointing out that defendants need not disprove plaintiff's claims.

---

* Judge Major filed a strong dissenting opinion.

3. "Now, the defendant insurers in this case are entitled to the same fair and unprejudiced treatment as individuals would be under like circumstances, and you should decide the case with the same impartiality that you would use in deciding a case between two individuals."

4. "Now, in order for the plaintiff to recover, it has the burden to show by a preponderance of the evidence that the damage to its property for which recovery is sought was caused solely and exclusively by the direct force of windstorm."

5. "Now, the burden of proof is on the plaintiff to prove by a preponderance of the evidence in this case that the damage claimed to have occurred to plaintiff's property, and for which it seeks to recover in this case, was caused directly by windstorm and was not the result of some other cause. It is not incumbent upon the defendants to prove that the damage to plaintiff's building or property was caused by some other means or to explain the actual cause of such damage, the burden of proof being upon the plaintiff to prove that the damage was actually and directly caused by windstorm."

A third reference to burden of proof relates only to civil cases in general and defines "preponderance of the evidence." [6]

A fourth instruction to which plaintiff points deals with a possible finding of equal probability,[7] and the last concerns possible finding of no loss by windstorm or a loss by combination of causes.[8] We find no oppressiveness or bias in these instructions.

■ Plaintiff contends that two of its proffered instructions were improperly rejected. The content of one [9] was covered by an instruction already given. The same is partially true of the second

instruction [10] which also contradicts the Trial Judge's holding, with which we agree, that the policies were not ambiguous.

■ The plaintiff sees error in rejection of proffered testimony concerning high winds and their effect prior to the beginning of the snowstorm on January 26, 1967, the day before the roof collapse alleged in the Complaint.

Plaintiff argues that no lack of notice to defendants would have occurred because in answer to interrogatories plaintiff had referred to windstorm conditions and high winds commencing on and prior to January 24, 1967.[11] De-

6. "Now, the burden, as I have told you before, is on the plaintiff in a civil action such as this to prove every essential element of his case by a preponderance of the evidence. If the proof fails to establish any essential element of the plaintiff's case by a preponderance of the evidence, then you should find that it has failed to sustain its burden of proof. As I told you before, to establish by a preponderance of the evidence means to prove that something is more likely so than not so."

7. "You are further instructed that if from all of the evidence you conclude that it was equally probable that the loss and damage to the plaintiff's building and property which occurred on January 27, 1967, resulted from a cause or causes or a peril or perils other than windstorm, as defined to you in these instructions, then it is your duty to find that the plaintiff has failed to sustain its burden of proof."

8. "If you find from a preponderance of the evidence that the damage to the building of the plaintiffs was not directly caused by windstorm, or if you find from a preponderance of the evidence that there was a windstorm prior to the collapse of the roof of said building which, together with the snow on said roof caused the damage to the building of the plaintiff, you shall return, under either of those circumstances, a verdict for the defendants. In other words, if you find from a preponderance of the evidence that snow either directly or indirectly caused the damage to the building of the plaintiff your verdict must be for the defendants."

9. "The issuance by the defendants of the policies of insurance upon which this suit is based is conceded, and you will take it as an established fact in the case

that they were issued to the plaintiff and that subject to the various propositions stated in others of these instructions, the defendants are bound by their undertakings in the policies."

This instruction was covered by the following which was given:

"Now, in this case it is established by the pleadings that each of the defendant insurance companies issued a policy of insurance by which it promised or agreed to reimburse the plaintiff for actual loss and damage sustained by the plaintiff's building as a direct result of damage by windstorm. The defendants admit that the policies were issued and that they were in full force and effect in the month of January, 1967, but they claim that they were not required to pay for any damage incurred, contending that whatever damage did occur was not the direct result of windstorm."

10. "Policies of insurance are construed to the end that the insured is not deprived of insurance for which the insured has paid, except where the policies clearly, definitely and explicitly require it; and, subject to the various propositions stated in others of these instructions, when they are issued by the insurance companies, the companies are bound by their undertakings under the policies."

11. *Interrogatory No. 1.* State the date, and the time on said date, when the alleged windstorm occurred which plaintiff claims damaged the building described in the complaint herein.
*Answer:* The windstorm conditions (the high winds) commenced on and prior to January 24, 1967 and continued at varying velocities to and following 3:00 a. m. on January 27, 1967, when the loss and damage culminated by collapse of the roof.

fendants reply that the answer was not completely responsive as high winds alone are not a windstorm (as defined by the Trial Judge without objection) and surely cannot be construed as an amendment to the complaint. It is the plaintiff's view that it had met the requirement of not surprising the opposition, good faith, equal opportunity for access and no prejudice to the opposition from the testimony offered. Plaintiff derives these standards from Kujala v. Jackson, 1970, 123 Ill.App.2d 11, 259 N. E.2d 648, 649, which dealt with calling a witness unnamed in answers to interrogatories, where 10 days prior to trial defendant had been told that the written statement of the witness was in the possession of plaintiff and a copy was given to opposing parties.

We cannot agree with plaintiff that this case supports a finding of error in the Trial Judge's ruling on the relevance of the testimony here excluded.

In Jay Bee Warehouse Co. v. American Eagle Fire Ins. Co., 7 Cir., 1959, 270 F.2d 883, 885, 886, and Danielson v. St. Paul Fire & Marine Ins. Co., 1959, 256 Minn. 283, 98 N.W.2d 72, 75, cited by plaintiff, there was evidence of actual damage from wind in the preceding days. In Beaty Shopping Center, Inc. v. Monarch Ins. Co., 4 Cir., 1963, 315 F.2d 467, 470, the evidence concerned windstorm damage occurring in the area and to the structure involved on the day the roof collapsed. None of these cases dealt with an exclusion clause.

■ The witness whose opinion as to effect was sought to be presented was neither an architect nor an engineer but a meteorologist to whom a hypothetical question was put. Plaintiff had already introduced the testimony of its engineer expert.

■ Plaintiff also wished, at its own expense, to have the jury view the actual site because of divergent views as to an "air channel" in the approach through the atmosphere to the collapsed building. The evidence did include a diagram of the area as well as photographs. We find no abuse of discretion in the Trial Judge's rulings on these two points.

In the course of discovery, plaintiff submitted interrogatories as follows:

18. Do you know of any damage to property located within a radius of ten miles from the building described in the complaint and alleged to have been damaged by windstorm, which occurred on January 26, 1967, or January 27, 1967, and resulted from an alleged windstorm?

19. If the answer to Interrogatory No. 18 is in the affirmative:

a. What, to the best of your knowledge, is the date and hour and the location of each such occurrence?

b. Did any such damage involve a place of occurrence?

c. Did any roof collapse involve curved (truss) roofs, and if so identify such occurrences?

■ Objections to these interrogatories were sustained. We agree that evidence of other roof collapses would have little bearing on the cause of the damage to plaintiff's building and would present in each case an issue as to the cause of the damage there. Plaintiff's brief indicates that it had data as to other roof collapses but plaintiff argues that admission on discovery would have removed obstacles to gathering and presentation of evidence. We find no error here.

We have scrutinized all other authorities to which plaintiff refers, but upon due consideration we conclude that the judgment of the District Court should be affirmed.

Affirmed.